IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOUGLAS BADO, on behalf of himself and all other similarly situated persons,**<br><br>Plaintiffs,<br><br>v.<br><br>**DOWN UNDER, INC. d/b/a BRAVO BRAVO, INC. d/b/a BRAVO BRAVO,**<br><br>and<br><br>**EDGAR URIONA VEIZAGA,**<br><br>and<br><br>**TATIANA CRUZ,**<br><br>Defendants. | Civil Action No. |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Douglas Bado, by and through undersigned counsel, on behalf of himself and all persons similarly situated, hereby files this Class and Collective Action Complaint against Defendants Down Under, Inc. d/b/a Bravo Bravo, Edgar Uriona Veizaga and Tatiana Cruz, seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"), the District of Columbia Minimum Wage Act, D.C. Code § 32-1001 *et seq*. ("DCMWA"), and the District of Columbia Wage Payment and Collection Law, D.C. Code § 32-1301 *et seq*. ("DCWPCL").

## JURISDICTION AND VENUE

1.  Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and

28 U.S.C. § 1331.

2. Jurisdiction over any state law claims is proper under 28 U.S.C. § 1367.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. The events giving rise to Plaintiffs' claims occurred within this District, Defendants conduct business in this District, and Defendant Down Under, Inc. d/b/a Bravo Bravo is headquartered in this District.

## PARTIES

4. Plaintiff Douglas Bado is an adult individual currently residing in Takoma Park, Maryland. Plaintiff was employed as a bartender by Defendants at Bravo Bravo, a nightclub in the District of Columbia, from approximately April 2022 through approximately November 2022. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to being a plaintiff in this action. *See* Ex. 1.

5. Defendant Down Under Inc. d/b/a Bravo Bravo, Inc. d/b/a Bravo Bravo ("Company" or "Bravo Bravo") is a District of Columbia corporation headquartered and operating in Washington, D.C. Defendant Company owns and operates Bravo Bravo, a nightclub located at 1001 Connecticut Avenue, NW, Washington, D.C., 20036.

6. At all relevant times, Defendant Company was an employer of Plaintiff within the meaning of 29 U.S.C. § 203(d).

7. During at least the last three years, Defendant Company has had gross annual sales in excess of $500,000.

8. During at least the last three years, Defendant Company employed workers, including Plaintiff, who are or were engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person, as required by 29 U.S.C. §§ 206-207.

9. Defendant Edgar Uriona Viezaga is an owner and officer of Defendant Company and was responsible for the illegal payroll practices alleged in this Complaint.

10. Defendant Uriona supervised and directed the work of Plaintiff and Class Members.

11. Defendant Uriona set and enforced Defendant Company's illegal payroll policies as applied to Plaintiff and the Class Members, including Defendant Company's policy and practice of paying Plaintiff and Class Members no wages for their work performed at Bravo Bravo.

12. Defendant Uriona had the authority to (and did) hire, fire, and discipline employees of Bravo Bravo.

13. Defendant Tatiana Cruz is an owner and officer of Defendant Company and was responsible for the illegal payroll practices alleged in the Complaint.

14. Defendant Cruz had the authority to (and did) hire, fire, and discipline employees of Bravo Bravo. Defendant Cruz interviewed and hired Plaintiff.

15. Defendant Cruz supervised and directed the work of Plaintiff and Class Members working at Bravo Bravo.

16. Defendants Uriona and Cruz exercised discretionary decision-making authority over matters related to wages, tips, and payroll. Defendants Uriona and Cruz were thus "employers" within the meaning of the FLSA, DCMWA and DCWPCL and may be held individually liable for the illegal payroll violations alleged in this Complaint.

## CLASS AND COLLECTIVE DEFINITIONS

17. Plaintiff brings Counts I of this lawsuit as a FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following class of potential opt-in litigants:

> All current or former front-of-house or service workers of Bravo Bravo, including bartenders, cocktail servers, barbacks, bussers and similar employees, who performed work at Bravo Bravo within the last three (3) years (the "FLSA Collective").

18. Plaintiff brings Count II-IV of this lawsuit as a class action pursuant to Fed R. Civ. P. 23, on behalf of himself and the following class:

> All current or former front-of-house or service workers of Bravo Bravo, including bartenders, cocktail servers, barbacks, bussers and similar employees, who performed work at Bravo Bravo within the last three (3) years (the "D.C. Class").

19. The FLSA Collective and D.C. Class will collectively be referred to herein as the "Classes." Members of the FLSA Collective and the D.C. Class will collectively be referred to as the "Class Members."

20. Plaintiff reserves the right to redefine the Classes and to assert claims on behalf of other classes prior to notice or class certification, and thereafter, as necessary.

## **FACTS**

21. Bravo Bravo is a night club or bar operating in Washington, D.C.

22. Bravo Bravo employed Plaintiff as a bartender from approximately April 2022 through approximately November 2022.

23. Plaintiff typically worked two (2) ten-hour (10) days per week, Friday and Saturday, during the entirety of his employment with Bravo Bravo.

24. During the entirety of his employment with Bravo Bravo, Defendants never paid Plaintiff and the Class Members <u>any</u> wages whatsoever.

25. Defendant never even paid Plaintiff and the Class Members the "tipped minimum wage" required by the FLSA ($2.13 per hour) and DCMWA ($5.35 per hour).

26. Defendant Company never issued Plaintiff and the Class Members an IRS Form W-2 (or Form 1099).

27. Defendant Company never issued Plaintiff and the Class Members any paycheck for the work they performed at Bravo Bavo.

28. Rather, the only compensation Plaintiff and the Class Members received for their work at Bravo Bravo was the <u>tips</u> they earned from customers, which was at all times "the property of the employee whether or not the employer has taken a tip credit under Section 3(m) of the FLSA." 29 C.F.R. § 531.52.

29. Plaintiff and the Class Members were required to participate in a tip-sharing pool.

30. Class Members who worked as barbacks had no customer interaction, and yet, were paid by Bravo Bravo exclusively out of the tips earned by service staff who had customer interaction, such as Plaintiff and other bartenders and cocktail waitresses.

31. Plaintiff and Class Members were required to place all cash tips received in common tip jars controlled and overseen by Defendants.

32. Defendant Cruz would reprimand any employee who failed to put their cash tips in the common tip jars.

33. At the end of each night, Defendant Cruz counted the cash and credit card tips, and distributed <u>some</u> (but not all) of the tips to Plaintiff and the Class Members.

34. Defendant Cruz did not provide Plaintiff and the Class Members an accounting of or itemized statement reflecting the total amount of cash and credit card tips received, or how much Plaintiff and the Class Members "owed" Bravo Bravo at the end of each night.

35. Defendant Cruz, on behalf of Defendant Company, unlawfully converted the tips of Plaintiff and other bartenders and servers for use by Defendants to (among other things) compensate barbacks (who had no customer interaction) and makeup for alleged register shortfalls. However, Defendants refused to provide any evidence or documentation of the Class Members' alleged register shortfalls.

36. Plaintiff and Class Members were not informed in advance of the employer's use

the "tip credit" provisions to satisfy their minimum wage obligations as required by 29 U.S.C. § 3(m)(2)(A) and 29 C.F.R. § 531.59(b). Plaintiff and the Class Members were not informed of:

    a. The "amount of cash wage that is to be paid to the tipped employee" (indeed, Bravo Bravo paid Plaintiff and the Class Members <u>no</u> cash wages);

    b. The "additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer" (as there were no cash wages to be "increased");

    c. Bravo Bravo's tip-pooling policy (which unlawfully included employees who had no customer interaction);

    d. That only employees who "customarily and regularly receive tips" could be included in the tip-pool; and

    e. That Defendants' (purported) tip credit would not apply to any employee who was not informed of the tips-credit requirements at Section 3(2)(m) of the FLSA. 29 C.F.R. § 531.59(b).

37. Plaintiff and Class Members were not informed in advance as to what amount or percentage of tips would be contributed to barbacks and bussers.

38. Plaintiff and the Class Members were not furnished with written (or other) notice regarding the tipped minimum wage provisions of the DCMWA at D.C. Code § 32-1003(f), as required by D.C. Code § 32-1003(g)(1)(A).

39. Plaintiff and the Class Members were not furnished with written (or other) notice of Bravo Bravo's tip sharing policy, as required by D.C. Code § 32-1003(g)(1)(C).

40. Plaintiff and the Class Members were not furnished with written (or other) notice of the percentage by which tips paid via credit card would be reduced by credit card fees, as

required by D.C. Code § 32-1003(g)(1)(D).

41. Defendants did not post Bravo Bravo's tip-sharing policy within its business, as required by D.C. Code § 32-1003(g)(2).

42. Plaintiff and the Class Members were not furnished at the time of payment of wages (likely because no wages were paid) an "itemized statement showing the following: (1) Date of the wage payment; (2) Gross wages paid; (3) Deductions from and additions to wages, including a separate line for gratuities; (4) Net wages paid; (5) Hours worked during the pay period; (6) Employee's tip-declaration form for the pay period, delineating cash tips and credit-card tips," as required by D.C. Code § 32-1008(b).

43. At the time of hiring, Plaintiff and the Class Members were also not furnished with a written notice containing any of the following: "(1) The name of the employer and any 'doing business as' names used by the employer; (2) The physical address of the employer's main office or principal place of business, and a mailing address, if different; (3) The telephone number of the employer; (4) The employee's rate of pay and the basis of that rate, including: by the hour, shift, day, week, salary, piece, commission, any allowances claimed as part of the minimum wage, including tip, meal, or lodging allowances, or overtime rate of pay, exemptions from overtime pay, living wage, exemptions from the living wage, and the applicable prevailing wages; (4A) The employer's tip-sharing policy, consistent with the requirements of § 32-1003(g)(1)(B) through (D); (5) The employee's regular payday designated by the employer in accordance with § 32-1302," all as required by D.C. Code § 32-1008(c).

44. Indeed, Defendants provided Plaintiff and Class Members no documentation regarding wages paid and tips earned.

45. Due to Defendants' failure to comply with the notice requirements stated herein at

7

Paragraphs 34 through 44, Defendants' failure to pay Plaintiff and the Class Members any wages, Defendants' unlawful retention of employee tips, and Defendants' inclusion of employees such as barbacks in the tip-sharing pool, Defendants were at no time entitled to take a "tip credit" under either the FLSA or DCMWA. Indeed, Defendants made no attempt to comply with federal and D.C. tipped minimum wage and notice requirements.

46. In addition to unlawfully converting tips of bartenders and cocktail waitresses to compensate barbacks (who had no customer interaction), Plaintiff and Class Members' tips were also unlawfully converted to the use of Defendant by, e.g., forcing Class Members to reimburse Defendant Company for alleged register shortfalls (for which no documentation or other proof was provided by Defendants).

47. Multiple employees complained to Defendants Uriona and Cruz about Defendants' failure to pay Plaintiff and the Class Members any hourly wage.

48. In or around December 2022, Bravo Bravo bartender Kaila Whittington specifically told Defendant Cruz and Bravo Bravo general manager Yonis Barahona that it was unlawful under D.C. law for Defendants to not pay employees at least the D.C. tipped minimum wage.

49. Around the same time, there were multiple meetings (which typically took place while Defendant Cruz was counting the tips at the end of the night) during which employees complained to Defendants Cruz and Uriona that they should be paid an hourly wage.

50. Despite these complaints, Defendants took no corrective action to ensure that they paid Plaintiff and the Class Members the applicable minimum or tipped minimum wage under the FLSA or DCMWA.

51. Defendants acted willfully and with reckless disregard of clearly applicable FLSA and DCMWA provisions by failing to pay Plaintiff the Class Members any wages whatsoever,

unlawfully converting tips, and failing to provide required wage and tip notices, itemizations, statements and postings.

## COLLECTIVE ACTION ALLEGATIONS

52. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective as defined above.

53. Plaintiff desires to pursue his FLSA claims on behalf of himself and any individuals who opt into this action pursuant to 29 U.S.C. § 216(b).

54. Plaintiff and the FLSA Collective are "similarly situated" as that term is used in 29 U.S.C. § 216(b), because *inter alia*, all such individuals worked as front-of-house staff (bartenders, cocktail waitresses, barbacks, bussers, and similar employees) pursuant to Defendants' above-described common pay practices and, as a result of those practices, were not paid the full minimum wage required by 29 U.S.C. § 206. Resolution of this action requires inquiry into common facts, including *inter alia*, Defendants' compensation, timekeeping and payroll policies.

55. Specifically, Defendants failed to pay Plaintiff and the FLSA Collective the minimum wage required by 29 U.S.C. § 206 and unlawfully converted or withheld tips in violation of 29 U.S.C. § 203(m)(2)(B).

56. Furthermore, as described above, Defendants failed to comply with the tip credit rules found at 29 U.S.C. § 203(m).

57. The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' business and human resources records.

58. Defendants employ many FLSA Collective Members. These similarly situated employees may be readily notified of this action through direct U.S. mail, email, posting at Defendants' business, social media, SMS text message, and/or other appropriate means, and

allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid minimum wages, illegally converted tips, liquidated damages, and attorneys' fees and costs under the FLSA, DCMWA, and DCWPCL.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff brings Counts II through IV as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the D.C. Class defined above.

60.    The members of the D.C. Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are in excess of forty (40) members of the D.C. Class.

61.    Plaintiff will fairly and adequately represent the interests of the D.C. Class because there is no conflict between the claims of Plaintiff and those of the D.C. Class, and Plaintiff' claims are typical of the claims of the D.C. Class.  Plaintiff's Counsel are competent and experienced in litigating wage and hour and other complex labor matters, including class and collective actions like this one.

62.    There are questions of law and fact common to the proposed D.C. Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether Defendants have violated and continue to violate District of Columbia law through their policies or practices of not paying the minimum wage mandated by D.C. Code §§ 32-1003(a) and (f)(1), failure to furnish notices as required by D.C. Code §§ 32-1003(g)(1) and 32-1008(c), failure to furnish itemized wage statements as required by D.C. Code § 32-1008(b), and unlawful retention or conversion of tips in violation of D.C. Code § 32-1003(g)(3) and the common law.

63.    Plaintiff's claims are typical of the claims of the D.C. Class in the following ways,

without limitation: (a) Plaintiff is a member of the D.C. Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the D.C. Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the D.C. Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the D.C. Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the D.C. Class Members.

64. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the D.C. Class predominate over any questions affecting only individual Class Members.

65. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The D.C. Class is readily identifiable from Defendants' own employment records. Prosecution of separate actions by individual members of the D.C. Class would create the risk of inconsistent or varying adjudications with respect to individual D.C. Class members that would establish incompatible standards of conduct for Defendants.

66. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Furthermore, the amounts at stake for many of the D.C. Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

67. Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the D.C. Class. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
### Violations of the Fair Labor Standards Act
### Unpaid Minimum Wage and Unlawful Retention of Tips
### (Plaintiff and the FLSA Collective)

68. All previous paragraphs are incorporated as though fully set forth herein.

69. The FLSA requires covered employees be compensated for all hours worked at a rate of not less than $7.25 per hour. 29 U.S.C. § 206(a)(1).

70. Under certain limited circumstances, an employer is permitted to pay its tipped employees a sub-minimum wage of $2.13 per hour and claim the employees' tips as a credit towards the remainder of the employer's minimum wage obligations, where: (a) the tipped employee receives tips sufficient to cover the remaining $5.12 toward the minimum wage; (b) the employee is able to retain all of his tips, or the tips are properly pooled and distributed among employees <u>who may validly participate in a tip-sharing pool</u>; and (c) the "employer has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m)(2)(A)," including (i) the "amount of the cash wage that is to be paid to the tipped employee by the employer," (ii) "the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer," (iii) the valid tip-pooling policy, if tips are pooled; and (iv) that Defendants' (purported) tip credit would not apply to any employee who was not informed of the tips-credit requirements at Section 3(2)(m) of the FLSA. 29 C.F.R. § 531.59(b).

71. If an employer fails to satisfy these requirements, the employer loses entitlement to take a "tip credit" towards its minimum wage obligations to its employees, and is not entitled to

any offset based on the tips the employees received.

72. Employers may only include in the tip pools those employees who "customarily and regularly receive tips," 29 U.S.C. § 203(m), which in a restaurant or bar or night club setting means that the employee must have regular customer interaction.

73. Defendant Company is subject to the wage requirements of the FLSA because it is an "employer" under 29 U.S.C. § 203(d).

74. During all relevant times, Defendant Company was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

75. During all relevant times, Plaintiff and the FLSA Collective Members were covered employees entitled to the above-described FLSA protections. 29 U.S.C. § 203(e).

76. Plaintiff and the FLSA Collective Members are not exempt from the requirements of the FLSA. Plaintiff and the FLSA Collective are entitled to be paid at least $7.25 for each hour worked pursuant to 29 U.S.C. § 206(a)(1).

77. Defendants had no right to retain Plaintiff and the FLSA Members' tips for any purposes. 29 U.S.C. § 203(m)(2)(B).

78. Defendants' compensation scheme as applied to Plaintiff and the FLSA Collective failed to comply with both 29 U.S.C. § 206(a)(1) and 29 U.S.C. § 203(m) because Defendants paid Plaintiff and the FLSA Collective <u>no</u> cash wages whatsoever (not even the tipped minimum wage of $2.13) for each hour they worked.

79. Defendants also violated 29 U.S.C. § 203(m)(2)(B) by unlawfully retaining Plaintiff and the FLSA Collective Members' tips to, among other things, pay wages to barbacks and make up for alleged register shortfalls.

80. Defendants did not inform Plaintiff in advance of their use of the tip credit provisions of the FLSA as required by 29 C.F.R. § 531.59(b).

81. Defendants did not inform Plaintiff in advance of the amount of any cash wage he was to be paid.

82. Defendants did not inform Plaintiff in advance of the additional amount by which the wages they paid him were increased on account of the tip credit claimed by Defendants.

83. Defendants did not inform Plaintiff in advance of the tip-pooling policy, including what amounts he was required to contribute to the tip pool and what amounts of his tips would be shared or distributed with barbacks and bussers.

84. Defendants did not inform Plaintiff in advance that employees who were not informed of the FLSA's tip-credit requirements would not participate in the tip-sharing pool.

85. Even if Defendants compensated Plaintiff at $2.13 per hour (which they did not), Defendants would be ineligible to benefit from the tip credit under 29 U.S.C. § 203(m) because they did not inform employees in advance of its use of the tip credit provisions of Section 203(m), unlawfully retained Plaintiff and the FLSA Collective's tips, included employees who had no customer interaction (barbacks) in the tip pool, and paid Plaintiff and the FLSA Collective no wages whatsoever.

86. Defendants willfully failed to compensate Plaintiff and the FLSA Collective the minimum wage and tipped minimum wage required by the FLSA.

87. Defendants also failed to make, keep, and preserve records with respect to Plaintiff and the FLSA Collective sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5(a), 516.6(a)(1).

88. In violating the FLSA, Defendants individually and collectively acted willfully and with reckless disregard of clearly applicable FLSA provisions.

89. As owners and officers of Bravo Bravo who supervised and directed the work of Plaintiff and the FLSA Collective and exercised discretionary decision-making authority over payroll and tip policies, Defendants Uriona and Cruz may be held individually liable as "employers" of Plaintiff and the FLSA Collective within the meaning of the FLSA.

90. Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay an employee wages in conformance with the FLSA, and unlawfully retain employee tips, shall be liable to the employee for unpaid wages, unlawfully retained tips, liquidated damages, and attorneys' fees and costs incurred in recovering the unpaid wages and tips.

## COUNT II
### Violations of the D.C. Minimum Wage Act
### Unpaid Minimum Wage and
### Failure to Furnish Wage Notices and Statements
### (Plaintiff and the Classes)

91. All previous paragraphs are incorporated as though set forth fully herein.

92. The DMWA provides that covered employees working in D.C. be paid the following minimum wage rates: $15.00 per hour from July 1, 2020 through June 30, 2021; $15.20 per hour from July 1, 2021 through June 30, 2022; $16.10 per hour from July 1, 2022 through June 30, 2023; and $17.00 per hour on and after July 1, 2023.

93. Under certain limited circumstances, an employer is permitted to pay its tipped employees a sub-minimum wage of $5.35 per hour (for July 1, 2022 through June 30, 2023) as a credit towards the remainder of the employer's minimum wage obligations, where: (a) the tipped employee receives tips sufficient to cover the remaining $10.75 per hour towards the minimum wage; (b) the employee is able to retain all of his tips, or are properly pooled and distributing

among employees who may validly participate in a tip-sharing pool; and (c) the employer has complied with the written notice and posting requirements at D.C. Code §§ 32-1003(g)(1)-(2), which includes the notice requirements of D.C. Code § 32-1008(c).

94. If an employer fails to satisfy any of these requirements, the employer loses entitlement to take a "tip credit" towards its D.C. minimum wage obligations to its employees, and is not entitled to any offset based on the tips the employee received.

95. Employers may only include in the tip-sharing pool those employees who "customarily receive gratuities," D.C. Code § 32-1003(g)(3), which means an employee who has regular customer interaction.

96. Defendant Company is subject to the wage requirements of the DCMWA because it is an "employer" within the meaning of the DCMWA under D.C. Code § 32- 1002(3).

97. During all relevant times, Plaintiff and the D.C. Class Members were covered employees entitled to the above-described DCMWA protections. D.C. Code § 32- 1002(2).

98. Plaintiff and the D.C. Class are not exempt from the requirements of the DCMWA. Plaintiff and the D.C. class are entitled to be paid, as of July 1, 2022, $16.10 per hour for each hour worked. D.C. Code § 32- 1003(a).

99. Defendants had no right to retain Plaintiff and the D.C. Class Members' tips for any purposes.   D.C. Code § 32- 1003(g)(3).[1]

100. Defendants' compensation scheme as applied to Plaintiff and the D.C. Class failed to comply with D.C. Code §§ 32-1003(a) and (f) because Defendants paid Plaintiff and the D.C. Class <u>no</u> cash wages whatsoever (not even the applicable tipped minimum wage) for their hours

---

[1] Though unlawful under the DCMWA, Plaintiff does not seek to recover the unlawfully retained tips via the DCMWA. Rather, he only seeks the unlawfully retained tips, on behalf of himself and the Classes, via the FLSA and DCWPCL.

worked.

101. Defendants also violated D.C. Code § 32-1003(g)(3) by unlawfully retaining Plaintiff and the D.C. Class Members' tips.

102. As described above, Defendants failed to furnish Plaintiff and the D.C. Class Members with any of the written notices, postings or wage and tip statements required by D.C. Code §§ 32-1003(g)(1)-(2) and 1008(c).

103. Even if Defendants compensated Plaintiff the applicable tipped minimum wage (which they did not), Defendants would be ineligible to benefit from the tip credit under D.C. Code §§ 32-1003(f) because they failed to furnish Plaintiff and the D.C. Class Members with any of the written notices, postings or wage and tip statements required by D.C. Code §§ 32-1003(g)(1)-(2) and 1008(c), unlawfully retained Plaintiff and the D.C. Class Members' tips, included employees who had no customer interaction in the tip pool, and paid Plaintiff and the D.C. Class no wages whatsoever.

104. Defendants willfully failed to compensate Plaintiff and the D.C. Class the minimum wage and tipped minimum wage required by the DCMWA.

105. Defendants willfully failed to comply with the DCMWA's notice and posting requirements.

106. In violating the DCMWA, Defendants individually and collectively acted willfully and with reckless disregard of clearly applicable DCMWA provisions.

107. As owners and officers of Bravo Bravo who supervised and directed the work of Plaintiff and the D.C. Class and exercised discretionary decision-making authority over payroll and tip policies, Defendants Uriano and Cruz may be held individually liable as "employers" of Plaintiff and the D.C. Class within the meaning of the DCMWA.

108. Pursuant to D.C. Code § 32-1012, employers such as Defendants who fail to pay an employee wages in conformance with the DCMWA and fail to provide and/or maintain required notices, postings and wage statements shall be liable to the employee for the unpaid wage, statutory penalties, and an amount in liquidated damages equal to treble the amount of unpaid wages.

### COUNT III
### Violation of the D.C. Wage Payment and Collection Law
### (Plaintiff and the Classes)

109. All previous paragraphs are incorporated as though set forth fully herein.

110. The DCMWA, D.C. Code § 32-1012(a), provides that a civil action for violation of the DCMWA "may be commenced according to, and with all the remedies provided under, § 32-1308," the DCWPCL.

111. As stated above, Defendants violated the DCMWA by failing to pay Plaintiff and the D.C. Class any wages whatsoever, failing to provide and/or maintain notices, postings, and wage and tip statements, and including employees not eligible to participate in a tip-sharing pool in the tip pool.

112. As such, Defendants also violated the DCWPCL, D.C. Code §§ 32-1301(3), 32-1302, 32-1306(e).

113. Pursuant to D.C. Code §§ 32-1301(3)(E)(iii) and 32-1308, Plaintiff also seeks, on behalf of himself and the D.C. Class, all tips unlawfully retained in violation of 29 U.S.C. §§ 203(m)(2)(B) and 216(b).

114. Pursuant to D.C. Code § 32-1308, employers such as Defendants who violate the DCMWA and/or DCWPCL shall be held liable to the employee for the unpaid wages, including the unlawfully retained tips, statutory penalties, an amount in liquidated damages equal to treble the amount of unpaid wages and unlawfully retained tips, litigation costs, and attorneys' fees

computed in accordance with the updated Laffey Matrix.

## COUNT IV
### Conversion
### (FLSA Collective and the Classes)

115. All previous paragraphs are incorporated as though set forth fully herein.

116. Defendants illegally deprived Plaintiff and the Class Members of their tips, which was Plaintiff and the Class Members' property pursuant to the FLSA, DCMWA, DCWPCL, and common law.

117. Defendants did not have Plaintiff and the Class Members' consent to convert their tips to Defendants' use.

118. Due to Defendants' illegal conversion, Plaintiff and the Classes are entitled to all unpaid tips, plus consequential, compensatory and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief on behalf of himself and all others similarly situated:

a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective Members;

c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the D.C. Class;

d. Unpaid minimum wages and prejudgment interest, to the fullest extent permitted under the law;

e. Unlawfully retained tips, to the fullest extent permitted under the law;

f. Liquidated damages, to the fullest extent permitted under the law;

    g.  Statutory penalties, to the fullest extent permitted under the law;

    h.  Consequential, compensatory, and punitive damages, to the fullest extent permitted under the law;

    i.  Litigation costs, expenses and attorneys' fees and costs, to the fullest extent permitted under the law; and

    j.  Such other and further equitable relief as this Court deems just and proper.

Dated:  March 8, 2023                                    Respectfully Submitted,

**GOODLEY MCCARTHY LLC**

/s/ Ryan P. McCarthy
Ryan McCarthy (ID PA 00094)
James E. Goodley (ID PA00069)
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 394-0541
james@gmlaborlaw.com
ryan@gmlaborlaw.com

*Attorneys for Plaintiff and the Class*