IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOUGLAS BADO, on** <br> **behalf of himself and all other similarly** <br> **situated persons,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **DOWN UNDER, INC. d/b/a BRAVO** <br> **BRAVO, INC. d/b/a BRAVO BRAVO,** *et al.* <br><br> **Defendants.** | Civil Action No. 1:23-cv-00652-JEB |

## JOINT MOTION TO APPROVE FAIR LABOR STANDARDS ACT SETTLEMENT AGREEMENTS

Defendants Down Under, Inc. d/b/a Bravo Bravo, Inc. (hereinafter "Bravo Bravo"), Edgar Uriona Veizaga, and Tatiana Cruz (collectively, "Defendants"), and Named Plaintiff Douglas Bado, and Opt-In Plaintiffs Kaila Whittington, Josmary Velazquez, Nadia Ralda, and Christian Rojas (collectively with Douglas Bado referred to as "Plaintiffs"), each through their respective undersigned counsel, hereby file this Joint Motion to Approve Fair Labor Standards Act Settlement Agreements (the "Joint Motion"), requesting that the Court enter an order granting approval as fair, reasonable and adequate those portions of the settlement agreements that resolve Plaintiffs' claims against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").[1]

---

[1] The settlement agreements and total settlement amounts to be paid to Plaintiffs under the agreements also resolve Plaintiffs' claims for unpaid wages, liquidated damages and attorneys' fees and costs brought under the District of Columbia Minimum Wage Act, D.C. Code § 32-1001 *et seq.* ("DCMWA") and the District of Columbia Wage Payment and Collection Law, D.C. Code § 32-1301 *et seq.* ("DCWPCL"), but those state claims are not the subject of this motion they need not be approved by the Court. *See Solkoff v. Pa. State Univ.*, 435 F. Supp. 3d 646 (E.D. Pa. 2020) ("When, as here, the gross amount of the settlement is not apportioned among the various FLSA

## Case Background and Procedural History

This case involves a wage and hour dispute. Defendant Bravo Bravo is a nightclub located in the District of Columbia that generally operates two nights each week – Friday and Saturday ("Bravo Bravo" or the "Club"). The individual defendants are the owners and/or managers of Bravo Bravo. The Plaintiffs are former bartenders employed by Bravo Bravo to serve its customers. Throughout their employment with Bravo Bravo, Plaintiffs most commonly worked two shifts each week, with the exception of holiday weekends. The Club maintains it compensated Plaintiffs through tips and/or a "service charge"[2] added to each customer's bill that was then paid out to each of the individual Plaintiffs at the end of their shift. The parties dispute the amount of those receipts that were paid to Plaintiffs and the extent to which they constitute "wages" under the FLSA and D.C. law. The parties also dispute the number of shifts worked by each Plaintiff, and the number of hours worked during each shift.

---

and non-FLSA claims, the Court will consider whether the gross amount satisfies the FLSA claim only. This is so because the Court is required to approve only the part of the settlement agreement that implicates the FLSA claims.") (citing *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516 (E.D. Pa. 2016)); *see also Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088, at *4-5 (S.D.N.Y. Apr. 28, 2017) (holding that the court need only approve the FLSA settlement terms, not the state law settlement terms). As explained herein, each Plaintiff will be receiving over and above what they could have recovered in unpaid wages and liquidated damages under the FLSA (due to the higher wages and liquidated damages available under the DCMWA). As such it is not clear whether approval of even the FLSA settlements is necessary here, as "[t]he Court's review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims," and no amounts owed under the FLSA (other than arguably Plaintiffs' Counsel's fees) have been "compromised." *Eley v. Stadium Grp., LLC*, 236 F. Supp. 3d 59, 62 (D.D.C. 2017) (citing *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124 (D.D.C. 2014) (emphasis added). Nevertheless, the parties submit this motion in an abundance of caution due to the lack of binding authority in this Circuit as to whether court approval of FLSA settlements is necessary for dismissal of an FSLA claim.

[2] A "service charge" is a fee, typically a percentage of the total bill, that is automatically added to a customer's bill to pay for the service provided by the business's employees.

2

On March 9, 2023, Named Plaintiff Douglas Bado ("Named Plaintiff" or "Bado"), on behalf of himself and all other persons similarly situated, commenced this action by filing a Class and Collective Action Complaint (the "Complaint") against Defendants, for alleged violations of the FLSA, the DCMWA, and the DCWPCL. The Complaint alleges, among other things, that Defendants failed to pay Plaintiffs and other current or former employees any hourly wages for the work performed during these shifts (not even the applicable tipped minimum wage), and that Defendants also failed to comply with various notice requirements regarding wages and tips required by the FLSA and DCMWA. As such, Plaintiffs maintained, Defendants were at no time entitled to take a "tip credit" against their minimum wage obligations to Plaintiffs pursuant to Section 3(m)(2)(A) of the FLSA. *See* 29 C.F.R. § 531.59(b).

On June 21, 2023, Defendants filed their Answer to the Complaint, denying the Named Plaintiff's material allegations and any liability. Defendants' Answer also raised numerous affirmative and other defenses to the allegations in the Complaint, disputing both the alleged failure to pay wages and the Plaintiffs' ability to satisfy the requirements for a collective or class action.

On June 23, 2023, the parties filed a Joint Motion for Conditional Certification, which provided for a form notice to be sent to Bravo Bravo's bartenders and cocktail servers who worked during the statutory period; and that the Defendants would provide contact information for those persons. ECF No. 18. Pursuant to the Court's Order granting FLSA conditional certification (ECF No. 19), Defendants provided Plaintiffs with all such information available to them for those persons. In response to that notice being sent out, the four (4) Opt-In Plaintiffs named above returned notices of inclusion in the collective action, all of whom now seek approval of their settlement agreements with Defendants. Plaintiff Bado did not seek class action certification

pursuant to Fed. R. Civ. P. 23 and no class has been certified in this case. Defendants and their counsel agree that all Plaintiffs have been very ably represented by the law firm of Goodley McCarthy LLC, which focuses its practice on cases just like this one involving FLSA issues, state wage and hour matters, and class and collective actions in federal and state courts.

After a July 20, 2023 Status Conference, the Court directed the parties to exchange limited discovery prior to the commencement of the opt-in period, and ordered the case to be submitted for mediation before The Honorable Upadhyaya between October 10 and November 22, 2023. On August 24, 2023, the Court entered an order scheduling mediation for November 14, 2023. On the eve of that mediation, the parties announced to Magistrate Judge Upadhyaya that they had reached a settlement, and that mediation would not be necessary.

While no formal discovery has been issued, the parties have cooperated in the informal exchange of information pursuant to the Court's Minute Order of July 20, 2023. Specifically, Bravo Bravo produced certain "shift report" records reflecting, *inter alia*, the alleged hours worked per shift and the alleged amount of money received by each Plaintiff at the end of each shift in the form of "tips" and/or "service charges."

Based on these records and the Plaintiffs' allegations regarding hours worked, lack of hourly wages paid and Defendants' alleged failure to comply with FLSA and DCMWA tip credit notices, the parties engaged in arms-length settlement negotiations, through counsel, in an attempt to resolve this matter. Defendants, on the one hand, and each Plaintiff, on the other, negotiated and entered into 5 individual settlement agreements (1 for each plaintiff). Each Plaintiff's settlement was negotiated separately, based on the records mentioned above and their respective alleged hours worked and wages paid.

In reaching the settlement agreements the parties now seek the Court to approve, Plaintiffs' counsel has had the opportunity to review and analyze Defendants' records reflecting the monies Defendants maintain Plaintiffs received during their individual shifts. Counsel have also exchanged informal legal and factual argument regarding whether and why any of the compensation received by Plaintiffs would or would not qualify as "wages" under the FLSA and DCMWA, and in what amount.

### Settlement Terms

The parties seek approval of five separate settlement agreements entered into between each of the individual Plaintiffs and the Defendants. The settlement agreements provide for payment of well over 100% of the unpaid minimum wages and liquidated damages each Plaintiff could have recovered under the FLSA, due to the DCMWA's much higher applicable minimum wage and the availability of liquidated damages equal to treble the amount of unpaid wages, D.C. Code § 32–1012(b)(1), as compared to liquidated damages equal to only 100% of the unpaid wages under the FLSA. 29 U.S.C. § 216(b) .[3]

The settlement figures articulated in the agreements were generally the result of analyzing the amount of compensation actually received by the Plaintiffs at the end of each shift, including service charges and tips, compared with the applicable D.C. minimum wage, and discounting those receipts based upon the uncertainty of either party's position prevailing at a trial.[4] The parties also considered Plaintiffs' allegations of hours worked and lack of hourly wages paid. In exchange, the

---

[3] The D.C. minimum wage increased from $16.10 to $17.00 on July 1, 2023. In 2020, the minimum wage was $15 per hour. In comparison, the FLSA minimum wage was only $7.25 per hour at all times relevant to this lawsuit.

[4] Among other things, the parties disputed whether Plaintiffs actually received the full amount of services charges and tips reflected in Defendants' records.

settlement agreements contain mutual general releases of all claims. The settlement agreements also require that the Plaintiffs dismiss this action with prejudice within three business days of receipt of payment and successful deposit of the settlement amount.

In addition to other usual and customary terms, the settlement agreements reflect that the Plaintiffs will receive the following payments in exchange for a mutual general release and dismissal with prejudice of the current action:

1. <u>Douglas Bado</u>: $18,500. *See* **Exhibit 1**, Settlement Agreement Between Douglas Bado and Defendants.

2. <u>Kaila Whittington</u>: $18,215.37. *See* **Exhibit 2**, Settlement Agreement Between Kaila Whittington and Defendants.

3. <u>Josemary Velazquez</u>: $29,896.34. *See* **Exhibit 3**, Settlement Agreement Between Josemary Velazquez and Defendants.

4. <u>Nadia Ralda</u>: $22,000. *See* **Exhibit 4**, Settlement Agreement Between Nadia Ralda and Defendants.

5. <u>Christian Rojas</u>: $10,000. *See* **Exhibit 5**, Settlement Agreement Between Christian Rojas and Defendants.

Finally, Defendants will pay $40,000 to the firm of Goodley McCarthy LLC for attorneys' fees and costs, which was negotiated separately from, and in addition to, Plaintiffs' individual settlement recoveries. In other words, the fees to be paid to Plaintiffs' Counsel under the agreements in no way subtracted from any Plaintiff's FLSA recovery. As such, court approval of Plaintiffs' Counsel's fee recovery is not necessary in this case. *See Dew v. Mindfinders, Inc.*, No. 20-2930 (BAH), 2021 U.S. Dist. LEXIS 197732, at *13-14 (D.D.C. Oct. 14, 2021) ("Plaintiffs also request express judicial approval of the service awards, the attorneys' fees and costs, and the

6

administrator's fees and costs…. The Court need not approve any of these terms … since judicial 'review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims.'") (quoting *Sarceno v. Choi*, 78 F. Supp. 3d 446, 452 (D.D.C. 2015) (alterations added); *see also Cornelius v. Panera Bread Co.*, No. 17-cv-2565 (EGS/GMH), 2019 U.S. Dist. LEXIS 55676 (D.D.C. Mar. 6, 2019) ("Courts scrutinize the attorney's fees allocated in proposed FLSA settlement agreements 'to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients.'") (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (alterations in original).

## Argument

The settlement agreements should be approved by the Court as they were negotiated at arms-length between represented parties, and the Plaintiffs' individual recoveries represent more than 100% of the unpaid wages and liquidated damages they could have received pursuant to the FLSA, 29 U.S.C. § 216(b). The payment to each Plaintiff thus reflects a fair, reasonable, and adequate settlement of a *bona fide* dispute between the parties regarding FLSA requirements. All parties agree that settlement in this case is desirable to avoid unnecessary and potentially lengthy litigation. As evidenced by the filing of this Join Motion, the parties desire to resolve their difference in this case without engaging in further discovery or active litigation as it would not likely lead to any greater information necessary to resolve the litigation, and agree that the settlement agreements reached are fair and reasonable.

No binding case law exists in the District of Columbia (either at the state or federal level) requiring a D.C. court to assess and approve of proposed FLSA settlements. *See e.g., Dew v. Mindfinders, Inc.*, No. 20-2930, 2021 WL 4797551 at *3 (D.D.C. Oct 14, 2021) ("No binding

caselaw in this Circuit requires a district court to assess prosed FLSA settlements."). Declining to seek court approval, however, "leaves the parties in an uncertain position. If the parties privately settle FLSA claims and seek dismissal of the suit . . . the private settlement may be held unenforceable if the employer attempts to enforce the employees' waiver of claims per the judicial settlement at a later date." *Id.* As such, the parties seek approval of the settlement agreements to avoid this uncertainty.

The settlement agreement should be approved if: (1) a *bona fide* dispute exists that the settlement agreement(s) resolve; and (2) "the agreements reflect a reasonable compromise of the disputed issue rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.*; *see also Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982) (stating that FLSA settlement should be approved if the settlement "reflect[s] a reasonable compromise over [the] issues"). "A settlement is bona fide if it 'reflects a reasonable compromise over issues that are actually in dispute . . . .'" *Sarceno v. Choi,* 78 F. Supp.38 446, 450 (D.D.C. 2015) (finding a bona find dispute where "the most fundamental question in any FLSA action, namely, the amount of wages owed to the plaintiff, is contested."); *see also Dew,* 2021 WL 4797551 at *3 (finding a bona fide dispute where parties disagreed about, *inter alia,* whether overtime was actually paid and whether plaintiffs were entitled to liquidated damages).

There is no doubt that there are issues "actually in dispute" between the parties in this litigation. *Id.* Primarily, the parties dispute how many shifts the plaintiffs worked during the applicable period, and whether the sums actually paid to Plaintiffs at the end of each shift constitute "wages" under applicable law, as well as the amount of those sums. Furthermore, the parties dispute the adequacy or existence of notices provided to Plaintiffs regarding the tipping practices used by Bravo Bravo, as well as other notices that might be material in assessing liability. That is,

if Plaintiff prevailed and proved that Bravo Bravo's notices were inadequate under D.C. law (or the FLSA), then Defendants may have been liable to the Plaintiffs for the difference between the amount of any service charge paid to the Plaintiffs (*if* those service charges were creditable as wages towards Defendants' minimum wage obligations, which was disputed, and *if* they were actually paid, which was also disputed) and the full D.C. minimum wage ($15.00-$17.00 per hour during the relevant period), regardless of any "tips" earned by Plaintiffs, as opposed to just the D.C. "tipped" minimum wage, which rose from $5.35 to $6.00 per hour on May 1, 2023.[5] *See Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8 (D.D.C. 2010) ("If an employer fails to comply with the tip credit requirements, the employer is liable to tipped employees for the difference between the minimum wage and the wage paid to tipped employees, regardless of the tips that tipped employees received."). These disputes are fundamental to any action under the FLSA and state wage and hour claims as they directly impact the amount of unpaid wages potentially owed to Plaintiffs. "Consequently, the fundamental issue of the wages owed to plaintiffs and the appropriate damages are contested, thereby presenting a bona fide dispute for the Settlement Agreement to resolve." *Dew*, 2021 WL 4797551 at *4.

The settlement agreements must also reflect a "reasonable compromise" of the parties' dispute. In determining whether an agreement is reasonable, the court looks to the "totality of the circumstances." *Id.* at *3. In weighing the totality of the circumstances, the following factors are

---

[5] Under the FLSA, the tipped minimum wage is only $2.13 per hour. Thus, the Plaintiff's settlement recoveries calculated pursuant to what may be owed under D.C. law constitutes significantly more than what Plaintiffs would have been entitled to under the FLSA, especially if Plaintiffs were not able to show that Defendants' tip notices to Plaintiffs failed to satisfy the FLSA tip notice requirements. As noted by a court in this District, the notice requirements entitling an employer to take a tip credit are much "more demanding" under D.C. law than the FLSA. *See Portillo v. Smith Commons DC, LLC*, No. 20-49 (RC), 2022 U.S. Dist. LEXIS 144775, at *16 (D.D.C. Aug. 13, 2022). As such, the risks of recovery for Plaintiffs under the FLSA (for a lesser amount) were much more substantial than the DCMWA.

considered: "whether the proposed settlement (1) was the product of overreaching by the employer; (2) whether the settlement was the product of negotiation between represented parties following ... [a]rm's length bargaining[;] and (3) whether there exist serious impediments to the collection of a judgment by the plaintiffs." *Id.*; *see also Sarceno*, 78 F. Supp.38 at 451. "Courts must also be cognizant of the fact that 'settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Dew*, 2021 WL 4797551 at *3.

These settlement agreements are a reasonable compromise resulting from fair, arms-length negotiations, in which each party stridently pursued its best interests and brought to bear those facts and law supporting its position. Indeed, the settlement agreements are intended to pay 100% of the amount most likely to be adjudicated, *pursuant to D.C. law*, as the total outstanding wages owed to each Plaintiff based on Bravo Bravo's records and Plaintiff's allegations. If Plaintiffs elected to take their cases to trial and were able to succeed in establishing that none of the funds actually received by them at end of each shift (including tips, service charges, etc.) qualified as "wages" under the FLSA, and that Bravo Bravo did not act in good faith and with a reasonable basis, then under the FLSA they would each be entitled to a judgment equal to $7.25 for each hour worked during all shifts during the statutory period, times two. As stated above, the settlements here provide each Plaintiff far more than that "best day in court" under the FLSA for all shifts reflected on Bravo Bravo's records; in fact each Plaintiff is receiving an amount that is more than double their FLSA outcome, or at least $9,000 in excess of that FLSA outcome.     .

Finally, these agreements were negotiated at arms-length between sophisticated, seasoned counsel that are experienced in wage and hour disputes. Thus, no basis exists to conclude that there was any "overreaching" by Defendants. Indeed, the settlement agreements reflect a fair and

adequate compromise of Plaintiffs' claims that afford them "certainty and resolution," rather than extended litigation.

As to Plaintiffs' Counsel's recovery, Defendants will pay $40,000 to the firm of Goodley McCarthy LLC for attorneys' fees and costs, which was negotiated separately from, and in addition to, Plaintiffs' individual settlement recoveries. The fees to be paid to Plaintiff's counsel under the agreements in no way subtracted from any Plaintiff's FLSA recovery. As such, court approval of Plaintiffs' Counsel's fee recovery is not necessary in this case. *See Dew v. Mindfinders, Inc.*, No. 20-2930 (BAH), 2021 U.S. Dist. LEXIS 197732, at *13-14 (D.D.C. Oct. 14, 2021) ("Plaintiffs also request express judicial approval of the service awards, the attorneys' fees and costs, and the administrator's fees and costs…. The Court need not approve any of these terms … since judicial 'review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims.'") (quoting *Sarceno v. Choi*, 78 F. Supp. 3d 446, 452 (D.D.C. 2015) (alterations added); *see also Cornelius v. Panera Bread Co.*, No. 17-cv-2565 (EGS/GMH), 2019 U.S. Dist. LEXIS 55676 (D.D.C. Mar. 6, 2019) ("Courts scrutinize the attorney's fees allocated in proposed FLSA settlement agreements 'to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients.'") (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (alterations in original).

Here, where Plaintiffs' settlement recoveries constitute more than they could have possibly received under the FLSA had they succeeded on all legal and factual issues, and Counsel's fees were negotiated separately from their individual recoveries (and not as a percentage or a part of those recoveries), the Court need not evaluate the reasonableness of Plaintiff's Counsel's recovery under the FLSA. *See Dew*, 2021 U.S. Dist. LEXIS 197732, at *14 ("The various fees contemplated

11

in the Settlement Agreement are relevant insofar as they do not decrease the net settlement fund so much as to be unreasonable, but they need not individually be found reasonable by the Court to approve the Settlement Agreement."); *cf. Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 134 (D.D.C. 2014) ("Yet, considering that the damages to be paid to the plaintiffs represents 'six times the overtime amount actually reflected in the time slips maintained by Defendants' and the fact that the attorneys' fees appear to have been negotiated separately from the amount the plaintiffs will receive, *see* Mot. at 7, the Court's reluctance [to award fees to counsel greater than damages to plaintiffs] is not sufficient to overcome the presumption in favor of allowing parties to settle their own disputes") (approving settlement of a total of $7,000 in damages to two plaintiffs and $8,500 to plaintiff's counsel for fees and costs) (alteration added).

Moreover, Plaintiff's Counsel compromised their fees in this case. Utilizing the Laffey Fee Matrix, as required by D.C. Code § 32–1308(b)(1), Plaintiffs' attorneys' fees through December 5, 2023 are $$68,497.80 and Plaintiffs' Counsel's costs total $1,125.00. *See* Ex. 6, Declaration of Ryan P. McCarthy. As such, Plaintiff's Counsel's fee recovery is appropriate and does not present a bar to FLSA settlement approval here.

Finally, to the extent the Court does review the does review whether the fees are reasonable, Plaintiffs' Counsel's fees represent only 28.8% of the total settlement recovery in this case, which Courts in this District have consistently held to be reasonable in FLSA cases. *Cf. Trout v. Select Grp. Fed., LLC*, No. 21-1684 (RBW), 2023 U.S. Dist. LEXIS 181676 (D.D.C. Oct. 10, 2023) (40% counsel fee recovery reasonable); *Eley*, 236 F. Supp. 3d at 65 (approving an attorney fee award that "represent[ed] approximately 37% of the total recovery"); *Sarceno*, 78 F. Supp. 3d at 452 (approving an attorney fee award that "represent[ed] less than half of the total recovery");

*Carrillo*, 51 F. Supp. 3d at 126-27, 134 (approving an attorney fee award of slightly more than fifty percent of the total recovery).

WHEREFORE, the parties respectfully request that the Court enter an order approving the settlement agreements attached as Exhibits 1-5 to this Joint Motion and grant such further relief as the Court deems necessary and proper.

Respectfully Submitted,

**Lerch, Early & Brewer, Chtd.**

/s/ S. Hayes Edwards Jr.
James R. Hammerschmidt (No. 19156)
S. Hayes Edwards Jr. (No. 1015302)
7600 Wisconsin Ave., Suite 700
Bethesda, MD 20814
Telephone: (301) 841-0191
jrhammerschmidt@lerchearly.com
hedwards@lerchearly.com
*Attorneys for Defendants*

**GOODLEY McCARTHY LLC**

/s/ Ryan P. McCarthy
Ryan McCarthy (ID PA 00094)
James E. Goodley (ID PA00069)
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 394-0541
james@gmlaborlaw.com
ryan@gmlaborlaw.com
*Attorneys for Plaintiffs*

5617108.3                                                                 96455.001